**MICK LEVIN, ESQ., (SBN 021891)**
micklevin@mlplc.com
**MICK LEVIN, P.L.C.**
3401 N 32nd Street
Phoenix, AZ 85018
Ph: 480-865-3051 / 866-707-7222
Fax: 800-385-1684

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carlos Carrillo, an adult individual;<br><br>        Plaintiff,<br><br>vs.<br><br>Pima County Community College District;<br>Michelle Nieuwenhuis, an adult<br>individual; Alex Carranza, an adult<br>individual; Unknown Female Officer;<br>David Rucker, an adult individual;<br><br>        Defendants. | Case No. _____<br><br>**COMPLAINT** |

Plaintiff through undersigned counsel, alleges as follows:

### PARTIES

1.    Plaintiff Carlos Carrillo ("Plaintiff") is a resident of Pima County, Arizona and is domiciled therein.

2.    Defendant Pima County Community College District ("Defendant PCC") is an Arizona Community College established through Arizona Law pursuant to A.R.S. § 15-1401 *et seq.* and, as a body politic, is domiciled in the State of Arizona.

3. Pursuant to Defendant PCC's authority under A.R.S. § 15-144(A)(10), A.R.S. § 13-2911(C), and Pima County Community College District Board Policy "Institutional Security and Safety" BP 11.02, Defendant PCC employs police officers certified as peace officers by the Arizona Peace Officer Standards and Training Board.

4. The Pima Community College Police Department ("PCPD") is a fully certified law enforcement agency, with authority granted by Defendant PCC's Governing Board and Arizona Revised Statutes.

5. PCPD officers are employees of Defendant PCC, and PCPD is a unit of Defendant PCC's institution.

6. Defendant Michelle Nieuwenhuis is a resident of Arizona and, upon information and belief, is domiciled in the State of Arizona, County of Pima.

7. Michelle Nieuwenhuis is the PCPD Chief of Police and an employee of Defendant PCC in the Police Department.

8. Defendant Alex Carranza is a resident of Arizona and, upon information and belief, is domiciled in the State of Arizona, County of Pima.

9. Alex Carranza is a PCPD Police Corporal and an employee of Defendant PCC in the Department of Public Safety.

10. Unknown Female Officer is a resident of Arizona and, upon information and belief, is domiciled in the State of Arizona, County of Pima. At this time, Unknown Female Officer's true name is not known. When Plaintiff determines Unknown Female Officer's name, Plaintiff will amend the Complaint accordingly.

11. Defendant David Rucker is a resident of Arizona and, upon information and belief, is domiciled in the State of Arizona, County of Pima.

## FACTUAL BACKGROUND FOR ALL CLAIMS

12. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

13. Plaintiff is employed by Defendant PCC as Defendant PCC's Director of Online Learning Applications and Services.

14. As part of Plaintiff's duties in his role as Director of Online Learning Applications and Services, Plaintiff manages a number of employees and is responsible for staff in his department.

15. Ophelia Holguin (formally known as Ashley Holguin) was hired by Defendant PCC on or about May 11, 2020 as a temporary or contract worker in the Center for Learning Technology and was under Plaintiff's supervision.

16. Ophelia Holguin became a full time IT Specialist under Plaintiff's supervision on or about September 14, 2020.

17. Prior to December 3, 2021, Katie Chimienti was another employee under Plaintiff's supervision in the Center for Learning Technology.

18. At all times material hereto, David Fonseca was an IT Advanced Analyst employed by Defendant PCC under Plaintiff's supervision in the Center for Learning Technology.

19. At all times material hereto, Kristina Kuykendall was an IT Analyst employed by Defendant PCC under Plaintiff's supervision in the Center for Learning Technology.

20. On or about October 6, 2020, Plaintiff conducted a regularly scheduled monthly one-on-one review with Ophelia Holguin as part of Plaintiff and Ophelia Holguin's employment duties.

21. During the October 6, 2020 review, Plaintiff indicated to Ophelia Holguin that Ophelia Holguin is now required to go into the physical office rather than work from home as a result of Ophelia Holguin's lack of access to the technology required to do Ophelia Holguin's job.

22. From approximately October 2020 until at least the end of February 2021, Ophelia Holguin's job duties required her to be full time on Defendant PCC's campus.

23. At some point between approximately September and October 2021, an anonymous individual reported to Defendant PCC that Plaintiff offered to Katie Chimienti a promotion in exchange for sexual relations.

24. Upon information and belief, Defendant PCC conducted an investigation regarding the anonymous allegations and found the allegations to be unfounded.

25. During and after September 2021, David Fonseca's duties expanded to include Ophelia Holguin's one-on-one evaluations.

26. Katie Chimienti transferred positions to Support Coordinator in PCC's Human Resources department on or about December 6, 2021.

27. After February 2021 but before June of 2022, Ophelia Holguin began working a "hybrid" work from home schedule where Ophelia Holguin worked from home on Tuesdays and Thursdays and worked from the PCC office on Mondays, Wednesdays, and Fridays.

28. Around June 2022, David Fonseca noticed problems with Ophelia Holguin's work performance during Ophelia Holguin's work from home days.

29. During June 2022, David Fonseca informed Plaintiff regarding Ophelia Holguin's work from home performance issues.

30. On or about June 30, 2022, David Fonseca met with Ophelia Holguin in order to discuss work-related issues including attendance, diligence, and communication.

31. As David Fonseca's supervisor, Plaintiff was present for the meeting in a moderator capacity.

32. After the meeting on June 30, 2022, Ophelia Holguin requested from David Fonseca a written document outlining David Fonseca's expectations for Ophelia Holguin while Ophelia Holguin worked from home.

33. Ophelia Holguin requested the Work from Home Expectations document be signed by David Fonseca and Plaintiff.

34. David Fonseca signed the Work from Home Expectations document and presented the document to Ophelia Holguin to sign as well.

35. Ophelia Holguin refused to sign the Work from Home Expectations document.

36. Between June 30, 2022 and July 8, 2022, Ophelia Holguin contacted Plaintiff and requested to have a second meeting with Plaintiff, David Fonseca, and a representative of Defendant PCC's Human Resources department regarding the Work from Home Expectations document.

37. Pursuant to Ophelia Holguin's request, Plaintiff contacted Defendant PCC's Human Resources department and requested a meeting with David Fonseca, Plaintiff, and a representative from Human Resources.

38. The requested meeting took place on July 8, 2022 in which David Fonseca, Plaintiff, and a representative of PCC's Human Resources Department, Joy Hall was present.

39. During the meeting, Joy Hall requested that Plaintiff and David Fonseca either rescind the Work from Home Expectations document issued to Ophelia Holguin and re-issue the Work From Home Expectations document to all of Defendant PCC's employees under Plaintiff's supervision, or place the document with Ophelia Holguin's refusal to sign in Ophelia Holguin's file.

40. Sometime between July 8, 2022 and July 15, 2022, Ophelia Holguin reported to an unknown employee of Defendant PCC that Plaintiff had sexually harassed Ophelia Holguin.

41. On July 15, 2022, at approximately 9:00 a.m., Plaintiff returned from his previously scheduled one on one meeting with Defendant PCC employee Vice President of Distance Education, Michael Amick, and arrived at his office located at Defendant PCC's Norwest Campus Building G room/office 227.

42. At the time of Plaintiff's arrival, PCPD officer Corp. Alex Carranza and an unknown female PCPD officer were speaking with another one of Plaintiff's direct employees, Kristina Kuykendall.

43. When Plaintiff arrived at his office, he was met by Corp. Alex Carranza and the unknown female officer.

44. Corp. Alex Carranza and the unknown female officer indicated they wished to speak with Plaintiff.

45. Corp. Alex Carranza and the unknown female officer escorted Plaintiff to a conference or meeting room adjacent to Brian Stewart, Defendant PCC's Campus Vice President's, office located in Northwest Campus building A.

46. Corp. Alex Carranza and the unknown female officer walked one on either side of Plaintiff to the conference or meeting room adjacent to Brian Stewart, Defendant PCC's Campus Vice President's, office located in Northwest Campus building A.

47. Due to the proximity of Corp. Alex Carranza and the unknown female officer as well as the words spoken by both, Plaintiff could not have reasonably left the encounter.

48. Corp. Alex Carranza and the unknown female officer closed the door to the conference or meeting room adjacent to Brian Stewart, Defendant PCC's Campus Vice President's, office located in Northwest Campus building A.

49. Once inside the conference or meeting room, Corp. Alex Carranza and the unknown female officer interrogated Plaintiff as to his interactions with Ophelia Holguin.

50. Upon information and belief, neither Corp. Alex Carranza nor the unknown female officer advised Plaintiff of his *Miranda* rights or advised Plaintiff that he was free to leave at any time.

51. Plaintiff was confined to the conference or meeting room during the interrogation.

52. Due to the proximity of Corp. Alex Carranza and the unknown female officer as well as the words spoken by both, Plaintiff could not have reasonably left the encounter.

53. After Corp. Alex Carranza and the unknown female officer completed their interrogation of Plaintiff, Corp. Alex Carranza and the unknown female officer provided to Plaintiff a "Trespass Notice", attached hereto as Exhibit 3.

54. The "Trespass Notice" was signed by Michelle Nieuwenhuis, PCPD's Chief of Police, and dated July 15, 2022.

55. Corp. Alex Carranza and the unknown female officer walked one on either side of Plaintiff to Plaintiff's office located at Defendant PCC's Norwest Campus Building G room/office 227.

56. Due to the proximity of Corp. Alex Carranza and the unknown female officer as well as the words spoken by both, Plaintiff could not have reasonably left the encounter.

57. Corp. Alex Carranza and/or the unknown female officer instructed Plaintiff to take his personal items.

58. Corp. Alex Carranza and the unknown female officer instructed Plaintiff not to take Defendant PCC property, such as the laptop provided by Defendant PCC.

59. At approximately 10:38 a.m., Corp. Alex Carranza and the unknown female officer walked one in front of and the other behind Plaintiff to his vehicle in the parking lot of Defendant PCC's property.

60. Due to the proximity of Corp. Alex Carranza and the unknown female officer as well as the words spoken by both, Plaintiff could not have reasonably left the encounter.

61. At all relevant times, Corp. Alex Carranza and the unknown female officer were acting in performance of their official duties as Officers with PCPD.

62. From approximately 9:00 a.m. to approximately 10:38 a.m., Plaintiff's liberty was restrained through the Corp. Alex Carranza and the unknown female officer's show of authority.

63. From approximately 9:00 a.m. to approximately 10:38 a.m., Plaintiff did not reasonably feel free to ignore the presence of Corp. Alex Carranza and the unknown female officer.

64. Neither Corp. Alex Carranza nor the unknown female officer presented to Plaintiff a warrant for his arrest.

65. Neither Corp. Alex Carranza nor the unknown female officer made any indication that Plaintiff was under interrogation for a specific crime.

66. The "Trespass Notice" given to Plaintiff by Corp. Alex Carranza and the unknown female officer and signed by Michelle Nieuwenhuis, PCPD Chief of Police, hereto attached as Exhibit 3, states the following:

> This notice if to inform you that based on the nature of the alleged allegations under Pima College Police Case C22-03017, you are immediately being trespassed from any and all Pima College properties under A.R.S. 13-1503, Criminal Trespass in the third degree. Any reason for you being on Pima College property must be pre-approved by college police with prior notice of a prearranged meeting with college officials. Failure to provide notice may result in your arrest for trespass.

67. On July 18, 2022, after Plaintiff was removed from Defendant PCC's campus, Defendant PCC employees conducted a Behavioral Assessment Meeting regarding Plaintiff.

68. The results of the Behavioral Assessment Meeting conducted on July 18, 2022 are not known by Plaintiff.

69. A "Draft Notice of Emergency Removal Respondent", hereto attached as Exhibit 4, was delivered to Plaintiff's email address on July 18, 2022.

70. The "Draft Notice of Emergency Removal" is authored by David Rucker.

71. The Draft Notice of Emergency Removal Respondent indicates the following restrictions on Plaintiff:

    1. You are not allowed on any PCC campus's for any reason, except those listed below.

    2. To have the least disruptive impact on your employment you will be allowed to work from your residence in a remote capacity.

    3. Your supervisor Michael Amick will contact you work to be assignments.

    4. All contact regarding work is to be directed to your supervisor, Michael Amick, and/or Morgan Phillips. If there is a need to have a work related virtual meeting or telephone conversation with anyone at PCC you are ensure that Ms. (sic) Amick and Mr. Phillips are present.

    5. As you may not have the sufficient equipment at home or in case additional equipment and supplies are needed you are to notify Mr. Amick of your needs. You will be notified when the equipment and supplies are ready to be picked up. Then and only then are you allowed arrange for come to Human Resources to pick up these items.

    6. You are not to go on any PCC related business travel.

72. The "Draft Notice of Emergency Removal" indicates the following regarding Defendant PCC:

    PCC presumes you, as the Respondent, are not responsible for the reported misconduct unless and until the evidence supports a different determination. Moreover, an Emergency Removal meeting or any outcomes of the meeting should not be interpreted as a determination of responsibility or a sanction.

73. Despite PCC's stated presumption that Plaintiff was not responsible for the reported misconduct, Plaintiff was still subject to an illegal detention by Corp.

Alex Carranza and the unknown female officer, and, subsequently, unreasonably trespassed from Defendant PCC's property by PCPD Chief of Police, Michelle Nieuwenhuis.

74. The Behavioral Assessment Meeting and subsequent "Draft Notice of Emergency Removal" occurred 3 days after Plaintiff was removed and trespassed from Defendant PCC's campus.

75. On July 19, 2022, Plaintiff received a "Rescinded Trespass Notice", signed by Michelle Nieuwenhuis, PCPD Chief of Police. The Rescinded Trespass Notice states the following:

> This notice is to inform you that the previous trespass order from Pima Community College, issued to you on July 15, 2022, is rescinded. Any further restrictions to you are outlined in your Notice of Emergency Removal document issued by Human Resources on July 19, 2022. Please note that these restrictions are enforceable to the same degree as the trespass order where applicable.

76. On July 19, 2022, Ophelia Holguin made a Formal Complaint of Sexual Harassment against Plaintiff and requested Defendant PCC investigate the allegations therein.

77. David Rucker is employed by Defendant PCC. David Rucker is Defendant PCC's Human Resource Business Partner Title IX Coordinator.

78. Marty Marcias is an Advanced Analyst (Investigator) employed by Defendant PCC in Defendant PCC's Office of Dispute Resolution.

79. Marty Marcias is the assigned Title IX Investigator assigned to investigate Ophelia Holguin's Formal Complaint against Plaintiff.

80. On July 21, 2022, Plaintiff requested an Expedited Review Meeting, pursuant to Defendant PCC's policies and procedures for Title IX investigations, regarding the Notice of Emergency Removal and the restrictions contained therein.

81. Plaintiff specifically requested review regarding restriction four, as it requires the presence of two other individuals for all virtual meetings. Much of Plaintiff's job involves conducting virtual meetings and the presence of two other individuals was unduly burdensome.

82. On July 26, 2022, Plaintiff submitted a FOIA request to Defendant PCC, addressed to the "Pima County Community College District College Police" office, referencing Pima College Police Case C22-03017 and requested the following information (attached hereto as Exhibit 1):

> The complete and unredacted police report(s), and any supplemental information, including, but not limited to: 911 audio files, photographs, video footage, interviews- including written or audio files, witness information, and any other supplemental investigative information relevant to the report(s) associated with:
>
> (1) Ophelia Holguin's complaint made against Carlos Carrillo; and
>
> (2) Carlos Carrillo's removal and trespass notice from Pima Community College's Northwest Campus on July 15, 2022.

83. The Expedited Review Meeting was conducted on July 27, 2022 at 10:00 a.m.

84. The Expedited Review Meeting was conducted by David Rucker.

85. Joy Hall, the same Human Resources employee present during the July 8, 2022 meeting regarding Ophelia Holguin's Work from Home Expectations Document, was also present during the Expedited Review Meeting.

86.   During the Expedited Review Meeting, David Rucker indicated that Joy Hall would be assisting in the Title IX proceedings.

87.   After the Expedited Review Meeting was conducted, on July 27, 2022, Plaintiff requested access from Defendant PCC for the following items Plaintiff required in order to perform his job duties: a cell phone for Defendant PCC-related business and a printer for Defendant PCC-related business.

88.   On July 28, 2022, Plaintiff informed Michael Amick that, due to the current restrictions on Plaintiff's employment, he was unable to approve time sheets or supervise his employees.

89.   On July 29, 2022, the "Results of Expedited Review Meeting", authored by David Rucker, hereto attached as Exhibit 5, were delivered to Plaintiff's email address.

90.   The "Results of Expedited Review Meeting" indicated Plaintiff is now subject to the following restrictions:

1.   You are not allowed on any PCC campuses for any reason, except with the expressed written (emailed) consent of the Title IX Coordinator.

2.   To have the least disruptive impact on your employment you will be allowed to work from your residence in a remote capacity. You are to be provided with equipment and supplies that are routinely provided to employees who have and/or are allowed to work from their homes.

3.   Your supervisor Michael Amick will continue to oversee your work assignments and work performance.

4.   It is understood that given your position you are required to maintain contact with numerous individuals and groups. The follow is an outline of how these contacts must be conducted:

a.   All work contacts will made using Pima supplied means. This includes but is not limited to: Pima

sponsored Google Meets and Zoom; Pima email and chat; and calls going through the Pima Avaya telephone system.

    b.    Michael Amick must be cc'd on all work-related emails and chat lines.

    c.    The normal weekly staff meetings/round tables via Google Meet or Zoom are allowed but must include either Michael Amick or David Fonseca.

    d.    You may have direct telephone business interactions with any Pima Community College employee who holds a title of Director or higher without the need for approval or the presence of Michael Amick. You may also have similar telephone interactions with outside contractors or organizations partnering with the College on educational activities.

    e.    Any one-on-one telephone calls or virtual meetings with those who are at lower levels of authority than your position within Pima will require you to have Michael Amick or David Fonseca present. The exception to this are meetings or calls with David Fonseca.

    5.    You are only to conduct work assignments that are within your 'Core' work duties as outlined in your job description. Further, you are not to go on any business trips or have in-person business meetings on behalf of the College.

91.    The "Results of Expedited Review Meeting" further states:

As was outlined in previous communication, Pima Community College presumes you are not responsible for the reported misconduct unless and until the evidence supports a different determination. Moreover, these interim measures should not be interpreted or seen as a determination of responsibility or a sanction against you. Instead, they are intended to protect everyone within the Pima community, including yourself.

92. On August 1, 2022, David Rucker confirmed Plaintiff is only to do the "Core functions" of his full-time job, and, due to the restrictions, would not be eligible to teach. Plaintiff's official Job Description is attached hereto as Exhibit 6.

93. Despite "Pima Community College['s]" stated presumption that Plaintiff is "not responsible for the reported misconduct", the restrictions deprive Plaintiff of his ability to do his job.

94. On August 1, 2022, Defendant PCC employee, Michelle D. Nieuwenhuis, PCPD's Chief of Police, refused to provide records responsive to Plaintiff's request as evidenced by an email from Michelle Nieuwenhuis (attached hereto as Exhibit 2) that states as follows:

> We are not able to share case information at this time. The Pima College Police Department still has this as an active case with an issuing appointment scheduled with the county attorney's office on Friday, August 12. If the status of the case information changes, I will reach back out to you at that time.

95. Plaintiff applied for the PCC Dean of Students position, posted on HigherEdJobs.com on June 24, 2022.

96. Plaintiff was rejected from this position on August 8, 2022.

97. Upon information and belief, Plaintiff was rejected from this position due to the pending Title IX Investigation, despite Defendant PCC's stated presumption that Plaintiff is "not responsible for the reported misconduct."

## COUNT 1
## FREEDOM OF INFORMATION ACT

98.    Plaintiff incorporates the preceding paragraphs as if fully restated herein.

99.    Plaintiff brings this claim pursuant to the Freedom of Information Act claim under 5 U.S.C. § 552(a)(4)(B) and presents a federal question, conferring jurisdiction to this Court pursuant to 28 U.S.C. § 1331.

100.   Venue is proper in this Court under 5 U.S.C. § 552(a)(4)(B).

101.   As of the date of this filing, Defendant PCC has not produced records responsive to Plaintiff's FOIA request and has refused to produce records responsive to Plaintiff's FOIA request.

102.   Defendant PCC is an agency subject to 5 U.S.C. § 552.

103.   Pursuant to 5 U.S.C. § 552(a)(8)(A), Defendant PCC may only withhold information requested under 5 U.S.C. § 552 if the agency "reasonably foresees that disclosure would harm an interest protected by an exemption" or if "disclosure is prohibited by law" – in either case, the agency must consider and take reasonable steps to provide a partial disclosure if the "full disclosure of a requested record is not possible."

104.   Plaintiff requested information from Defendant PCC related to or compiled for law enforcement purposes.

105.   Information or records compiled for law enforcement purposes are subject to an exemption in accordance with 5 U.S.C. § 552(b)(7), however, the exemption only applies to records or information that "could reasonably be expected to interfere with enforcement proceedings"; "deprive a person of a fair trial or impartial adjudication"; "could reasonably be expected to constitute an unwarranted invasion of personal privacy"; "could reasonably be expected to disclose the

identity of a confidential source"; "would disclose techniques and procedures for law enforcement investigations or prosecutions"; or "could reasonably be expected to endanger the life or physical safety of any individual."

106. Defendant PCC did not refuse to provide records pursuant to a qualified exemption contained within 5 U.S.C. 552(b)(7), but rather, refused to provide records for a reason not authorized by statute.

107. Courts have held that the existence of an active investigation alone is not a sufficient reason for a complete denial of a request for information or records pursuant to 5 U.S.C. 552. *See Manna v. DOJ*, 51 F.3d 1158, 1164 (3d Cir. 1995); *Lion Raisins, Inc. v. USDA*, 231 F.App'x 563 (9th Cir. 2007).

108. Plaintiff requests this Court order Defendant PCC to produce records or information pursuant to Plaintiff's July 26, 2022 Freedom of Information Act request, subject to exemptions and requirements of 5 U.S.C. § 552.

109. Plaintiff further requests his attorney fees and costs as permitted by the Freedom of Information Act.

**COUNT 2**
**1983 UNREASONABLE SEIZURE OF A PERSON**

110. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

111. Plaintiff brings this claim against Defendant PCC pursuant to 42 U.S.C. § 1983.

112. 42 U.S.C. § 1983 confers jurisdiction to this Court pursuant to 28 U.S.C. 1343(3).

113. Venue is appropriate in this Court as the acts or omissions committed by Defendants occurred in the District of Arizona.

114. Nevertheless, Corp. Alex Carranza and the unknown female officer subjected Plaintiff to confinement.

115. Upon information and belief, Defendants Michelle Niewuenhuis, Alex Carranza, and the unknown female officer knowingly deprived Plaintiff of his constitutional rights guaranteed by the Fourth Amendment.

116. Upon information and belief, Defendants Michelle Niewuenhuis, Alex Carranza, and the unknown female officer knew they lacked probable cause to seize and interrogate Plaintiff.

**COUNT 3**
**1983 DEPRAVATION OF PROPERTY WITHOUT DUE PROCESS**

117. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

118. Plaintiff brings this claim against Defendant PCC is brought under 42 U.S.C. § 1983, conferring jurisdiction to this Court pursuant to 28 U.S.C. 1343(3).

119. Venue is appropriate in this Court as the acts or omissions committed by Defendants occurred in this District.

120. In addition to Plaintiff's position as the Director of Online Learning Applications and Services, Plaintiff was hired by Defendant PCC to teach one or more classes in the fall semester as an adjunct faculty member.

121. The "Results of Expedited Review Meeting" document is an expressly adopted policy by Defendant PCC.

122. The restrictions authored by David Rucker deprived Plaintiff of his property, specifically his employment as an instructor, without due process.

123. Plaintiff had an expected property interest in his employment to teach classes in the fall semester.

124. The restrictions authored by David Rucker on Plaintiff amounted to a taking of Plaintiff's property without due process.

125. Defendants PCC and David Rucker knowingly deprived Plaintiff of his constitutional rights without due process.

**COUNT 4**
**1983 DEPRAVATION OF FIRST AMENDMENT RIGHTS**

126. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

127. Plaintiff brings this claim against Defendant PCC is brought under 42 U.S.C. § 1983, conferring jurisdiction to this Court pursuant to 28 U.S.C. 1343(3).

128. Venue is appropriate in this Court as the acts or omissions committed by Defendant PCC occurred in this District.

129. Under the First Amendment, Plaintiff has the right to freedom of assembly.

130. Prior to July 15, 2022, Plaintiff was actively engaged in activities on Defendant PCC's public property including attending lectures, associating with coworkers, and other constitutionally protected activities.

131. Prior to July 15, 2022, Plaintiff was an active participant in the following committees on Defendant PCC's campus:

Academic Excellence Member, Staff Council

Leader, Director Committee

Distance Education Technical Support Team Representative, PimaOnline Priorities

Activities Planning, Northwest Campus Engagement

Instructor, This I Believe

Member, Pima Community College Prison Initiative

Participant, Chancellor Summer Retreat

Member, Common Support Request (FRC & D2L Help Desk)

Member, PimaOnline Department Head monthly meetings

Member representing Pima College, MSDL+D2L Monthly Call

Pima D2L Bi-weekly Technology Account Manager Meeting

132.   Since July 15, 2022, due to the restrictions adopted by Defendant PCC, Plaintiff is unable to attend the following activities on Defendant PCC's property: Chancellor's Retreat and workshops associated with All College Day.

133.   Furthermore, Plaintiff is unable to conduct research related to his degree on Defendant PCC's campus.

134.   Defendant PCC's restrictions as outlined in the "Trespass Notice", "Rescinded Trespass Notice", "Draft Notice of Emergency Removal", "Results of Expedited Review Meeting" would chill an ordinary person from continuing to attend activities on Defendant PCC's public campus.

135.   The aforementioned restrictions act as prior restraint on Plaintiff's constitutionally protected rights.

136.   Defendant PCC explicitly sought to restrict Plaintiff's right to assembly on Defendant PCC's property.

137.   Defendant PCC was expressly motivated by restricting Plaintiff's freedom of movement on Defendant PCC's property.

138.   Defendant PCC and David Rucker knew Plaintiff's rights were deprived without due process.

WHEREFORE, Plaintiff prays for the following relief:

A.   Regarding Count 1, order Defendant PCC to expeditiously make available the records requested by Plaintiff pursuant to 5 U.S.C. § 552, subject to restrictions therein.

B.   Regarding Counts 2-4, award compensatory damages to Plaintiff pursuant to 42 U.S.C. § 1983,

C.   For Plaintiff's reasonable attorneys fees and costs pursuant to 5 U.S.C. § 552, 42 U.S.C. § 1988, and any other applicable statute or regulation;

D.   Grant such other relief as the Court may deem proper.

DATED this 12th day of August, 2022.

MICK LEVIN, P.L.C.

/s/ Mick Levin
Mick Levin
*Attorneys for Plaintiff*